**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
Civil Action No.: _____

**ROBERT BROWN**                                                                                         **PLAINTIFF**

VS.                                                    **COMPLAINT**

**AK STEEL CORPORATION,**                                                                        **DEFENDANT**
a DE corporation

*Serve the following Registered Agent per Kentucky Secretary of State:*
**CSC Lawyers Incorporating Service Co.**
**421 W. Main Street**
**Frankfort, KY 40601**

* * * * * * * * *

Plaintiff, by counsel, makes the following Complaint:

**JURISDICTION AND VENUE:**

1.	Jurisdiction is proper.

2.	Venue is proper.

3.	Actions, as set forth in this Complaint, arise under the Kentucky Civil Rights Act, codified at 344.010, et. seq. and the American with Disabilities Act, codified at 42 U.S.C. §12101, et. seq.

4.	Plaintiff is a resident of Ironton, OH who worked for Defendant for over thirty-eight (38) years: from on or about August 28, 1969 to on or about Fall, 2007 when Defendant fired him.

5. Defendant is a foreign DE corporation who conducts business in Kentucky and whose mailing address is P.O. Box 191, Ashland, Kentucky 41105. Defendant's principal place of business is located at 9227 Centre Pointe Drive, West Chester, OH 45069 pursuant to records of the Kentucky Secretary of State.

6. Unlawful acts occurred in Ashland, Boyd County, Kentucky and said acts serve as a basis for Counts contained in Plaintiff's Complaint.

7. Plaintiff received his "Right to Sue" letter for purposes of this Complaint filed herein, copy attached hereto and marked **"Exhibit 1."**

## FACTUAL OVERVIEW:

8. This entire "Factual Overview" and document is incorporated into each and every provision, part, and Count of this document by reference as if the same were fully stated therein.

9. On or about August 28, 1969, Defendant hired Plaintiff as an employee.

10. Throughout Plaintiff's employment, Plaintiff was an excellent employee.

11. Throughout Plaintiff's employment, Plaintiff was a dedicated employee.

12. Throughout Plaintiff's employment, Plaintiff's job performance was of sufficient quality as to merit continued employment.

13. Throughout Plaintiff's employment, Plaintiff fulfilled his duties and responsibilities as an employee.

14. **August 21, 2007:** On or about August 21, 2007 Plaintiff was able to perform his job and without assistance from others, his position being "tundage setup," said position which Plaintiff had held for approximately ten years.

15. As of said time, Plaintiff had passed Defendant's required yearly fitness-for-duty examination, the same being conducted on or about May, 2007.

16. On or about August 21, 2007, however, Defendant issued Plaintiff the following work restrictions due to Defendant deeming Plaintiff to have the following "non-work related illness/injury": "No lifting over 50 lbs; No climbing straight ladders; Limit squatting, bending, stopping, or crouching to 1 time per hour." See **"Exhibit 2"** attached.

17. Defendant issued said work restrictions because Defendant regarded Plaintiff as physically disabled from obesity or morbid obesity due to a physiological disorder, believing and having an attitude that Plaintiff's size or alleged obesity was a permanent or long-term impairment or impairment physiological disorder that seriously disabled Plaintiff, and Plaintiff having type I insulin diabetes, substantially limiting Plaintiff's major life activity of working and performing manual tasks: lifting, lowered standing, lowered sitting, squatting, and bending. See **"Exhibit 2."** Defendant's perception was erroneous, a misperception. Plaintiff's condition was not so limiting so as to preclude him from working and performing manual tasks, including lifting, lowered standing, lowered sitting, squatting, and bending. Further, Plaintiff's condition did not impair his work. Defendant's misperception stemmed from fears, stereotypes, and myths of disabled persons, the very discriminatory animus that the ADA and KCRA sought to shield persons from suffering.

18. Believing in good faith that Plaintiff was a victim of illegal "regarded as" disability discrimination, Plaintiff voiced opposition to discrimination under the KCRA and ADA to Defendant several times.

19. Said opposition was made in good faith, Plaintiff genuinely believing that Defendant was discriminating against him under the KCRA and ADA on the basis of "regarded as" disability.

20. Plaintiff opposed said discrimination in his about September 10, 2007 grievance, marked **"Exhibit 3."**

21. Plaintiff opposed said discrimination in his about October 12, 2007 grievance, marked **"Exhibit 4."**

22. Plaintiff also voiced opposition to said discrimination by and through his union and also by Plaintiff himself to Defendant's agent, Premier Therapy, as well as to Defendant's medical department.

23. Plaintiff also engaged in statutorily protected activity by filing a complaint with the Equal Employment Opportunity Commission, charging and voicing opposition to "regarded as" disability discrimination.

24. Defendant retaliated against Plaintiff because of Plaintiff's opposition to and participation with the EEOC of the "regarded as" disability discrimination, including the following:

    (A) causing Plaintiff to suffer a hostile work environment and which was a material adverse action which altered the terms and conditions of Plaintiff's employment; and

    (B) actually and/or constructively firing Plaintiff when Defendant refused to put Plaintiff on Defendant's work schedule.

25. Plaintiff's personal physician, Dr. Roger Kline, declared on or about October, November, or Fall 2007 that Plaintiff was physically able to work his job position.

26. Defendant, however, continued to refuse to put Plaintiff on Defendant's work schedule, constituting both retaliation and further "regarded as" disability discrimination.

27. Defendant continued to misperceive and erroneously regard Plaintiff as a disabled person, and after thirty-eight (38) years of faithful service and work by Plaintiff to Defendant, Defendant actually and/or constructively fired Plaintiff, intentionally refusing to put Plaintiff on Defendant's work schedule.

28. Defendant fired Plaintiff because Defendant regarded Plaintiff to be physically disabled from morbid obesity, due to a physiological disorder, attitudinally believing that Plaintiff's alleged morbid obesity was a permanent or long-term impairment or impairment that seriously disabled Plaintiff, and Plaintiff having type I insulin diabetes, substantially limiting Plaintiff's major life activity of working and performing manual tasks, including lifting, lowered standing, lowered sitting, squatting, and bending. -Said tasks being that the average person in the general population can perform, and Defendant viewing Plaintiff as significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity when in fact Plaintiff's condition was not so limiting so as to preclude him from working, performing manual tasks, lifting, and bending. And further, foreclosed a broad range of employment options in the steel work industry.

29. Said firing was not just because Defendant erroneously misperceived and regarded Plaintiff as a disabled person, thus carrying out fears, myths, and stereotypes of

disabled people, but also because Plaintiff voiced opposition and filed an EEOC charge against disability discrimination in Defendant's workplace.

30. Defendant hostility ignored Plaintiff's requests because of Plaintiff's opposition to disability discrimination, refusing to answer his reasonable requests and effectively black-balling him from the workplace, as well as other ill treatment, and then actually and/or constructively firing Plaintiff by refusing to put Plaintiff on Defendant's work schedule.

31. Said treatment by Defendants has caused Plaintiff severe emotional and physical harm, as well as other damages, and which further escalated after Defendant fired Plaintiff from his job of over thirty-eight (38) years, Plaintiff being jobless, severely emotionally distraught, and unable to support his family.

32. Said treatment also constitutes intentional, callous disregard for Plaintiff's rights, including intentional violations of the ADA, warranting punitive damages under the ADA, Defendant's acts being egregious, outrageous, in the face of perceived risks, being malicious and with reckless disregard.

## STATEMENT OF COUNTS

### COUNT #1: DISABILITY DISCRIMINATION UNDER THE KCRA

33. Defendant's conduct constitutes unlawful disability discrimination under the Kentucky Civil Rights Act, (KCRA), K.R.S. 344.010, et. seq. and K.R.S. 344.040.

### COUNT #2: DISABILITY DISCRIMINATION UNDER THE ADA

34. Defendant's conduct constitutes unlawful disability discrimination under the Americans with Disabilities Act, (ADA), 42 U.S.C. § 12101, et. seq., including 42 U.S.C. 12112.

### COUNT #3: RETALIATION UNDER THE KCRA

35. Defendant's conduct constitutes unlawful retaliation under the Kentucky Civil Rights Act, (KCRA), K.R.S. 344.010, et. seq., including K.R.S. 344.040.

36. Plaintiff was engaged in statutorily protected activity, including voicing opposition to disability discrimination and filing an EEOC charge with the Equal Employment Opportunity Commission.

37. Plaintiff was actually and/or constructively discharged, and there was a causal connection to Plaintiff's protected activity, Plaintiff's protected activity being but-for and/or a substantial, motivating factor.

38. Plaintiff also suffered a hostile work environment which constitutes a material adverse employment action taken against him, affecting the terms and conditions

of his employment, and which was causally connected to Plaintiff's protected activity, Plaintiff's protected activity being but-for and/or a substantial, motivating factor.

### COUNT #4: RETALIATION UNDER THE ADA

39. Defendant's conduct constitutes unlawful retaliation under the Americans with Disabilities Act, (ADA), 42 U.S.C. 12101, et. seq., including 12 U.S.C. 12112.

40. Plaintiff was engaged in statutorily protected activity, including voicing opposition to disability discrimination and filing an EEOC charge with the Equal Employment Opportunity Commission.

41. Plaintiff was actually and/or constructively discharged, and there was a causal connection to Plaintiff's protected activity, Plaintiff's protected activity being but-for and/or a substantial, motivating factor.

42. Plaintiff also suffered a hostile work environment which constitutes a material adverse employment action taken against him, affecting the terms and conditions of his employment, and which was causally connected to Plaintiff's protected activity, Plaintiff's protected activity being but-for and/or a substantial, motivating factor.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following:

1. For a TRIAL BY JURY;
2. For damages, including, but not limited to, compensatory damages for humiliation, embarrassment, pain and suffering, and emotional distress;
3. For actual damages, including, but not limited to, back pay, front pay, and benefits lost;
4. For punitive damages under the ADA;
5. For Plaintiff's attorney fees and other costs related to this action; and
6. For any and all other relief to which Plaintiff is entitled.

/s/ Leslie Dean
**Leslie Dean, Attorney at Law, PSC**
**One Eagle View Plaza**
**3288 Eagle View Lane, Suite 300**
**Lexington, Kentucky 40509**
**Telephone: (859) 296-4575**
**Facsimile: (859) 296-4577**
**Email: ldean@LeslieDean.com**
ATTORNEY FOR PLAINTIFF,
ROBERT BROWN